## SHARFF *against* THE COMMONWEALTH.

### IN ERROR.

1810.

Lancaster,
Saturday,
June 2.

Upon an indictment for writing and publishing a libel on the characters of *A* and *B*, and also upon the memory of *C* deceased, the jury found the defendant " guilty of writing and publishing *a bill of scandal* against *A* and *B*, but not guilty as to any *C* deceased." Judgment reversed, because the defendant was not found guilty of the offence charged in the indictment.

Clerical errors may be amended in a criminal, as well as in a civil case.

ERROR to the Quarter Sessions of *Dauphin.*

The plaintiff in error was indicted for writing and publishing a libel on the characters of *Michael Ley* and *Leonard Ramler*, and also upon the memory of *John Ramler* deceased. The jury, many of whom were *Germans*, found the following verdict: " Guilty of writing and publishing *a bill of scandal* against *Ley* and *Rambler*, but not guilty as to any *Ramler* deceased."

Several errors were assigned and argued in this court; but the only one upon which the court thought it necessary to express an opinion, was, that the jury had not found the defendant guilty of the offence laid in the indictment, and that no judgment ought to have been entered upon their verdict.

*Goodwin* and *Fisher* for the plaintiff in error. This verdict does not find the matter in issue at all, or it finds it only by argument and inference, in either of which cases it is void. A bill of scandal, taking these words in any legal sense which can be given them, never can be synonymous with a libel, which is the offence charged, because, giving to each word its technical meaning, it is *an indictment of slander;* taking them in their popular sense and as a translation from the *German*, they mean a little scandalous report of less consequence than a libel. It requires an argument, and a refined one too, to make the finding and the charge the same; and this is never permitted even in a civil case; 5 *Com. Dig. Pleader* S. 22. 24; *a fortiori* in a case of this kind. It is impossible to say what the jury did mean; but if by any construction they could mean that which if expressed would acquit the defendant, the verdict is bad, and the judgment erroneous. *Rex* v. *Woodfall.* (a) Now it is clearly possible that they meant some other scandal than the libel in the indict-

(a) 5 *Burr.* 2669.

ment, for there is nothing in the finding, which refers to the indictment. The court therefore, must intend, must *guess*, something which does not appear, in order to support the verdict; and this they cannot do. It is not the error of a clerk, in point of form; the verdict wants substance; but a verdict in a criminal case cannot be amended by the clerk's notes even where there is only a misprision. *Bold's case* ( *a* ) *The King* v. *Keite* ( *b* ). Neither can the objectionable part of the verdict be rejected as surplusage, because there is no complete finding without those words, any more than with them The jury do not find the defendant guilty in manner and form as he stands indicted, but guilty of writing and publishing, which may well have been without malice, part of the essence of the crime. So that every way the verdict is bad.

*Elder* and *Hopkins* for the *Commonwealth*. There is nothing defective in this verdict, but the want of words of reference to the indictment; and this is a clerical error in entering the verdict, which may be set right, for there is no doubt that such errors may be amended even in criminal cases. Had the jury found that the defendant was guilty of writing and publishing a bill of scandal *as he stands charged*, where could have been the doubt? And yet these are merely technical words, which it is the duty of the clerk to add, and which in *The King* v. *Woodfall*, the court directed to be added. All incident and necessary circumstances may be supplied by intendment. *5 Com. Dig. Pleader* S. 31. If upon an indictment for murder, that the defendant *feloniously* wounded *A.* of which wound he died, the jury find that the prisoner did give a wound to *A*, together with the circumstances which attended the giving it, and that he died of the wound, and then conclude, " if upon the whole matter the court shall " be of opinion that the killing was murder, then we find " the defendant guilty of murder in the manner it is charged " in the indictment,"—this is a good finding, although it is not said that the wound was given *feloniously;* it must be intended. *Mackally's case* ( *c* ). 7 *Bac. Abr.* 31. By a construction still more natural it may be intended in this case, that the offence of which the defendant is found guilty, is the one

(*a*) 1 *Salk.* 53.     (*b*) 1 *Ld. Ray.* 138.     (*c*) 9 *Rep.* 68.

referred to in the indictment, as no other offence was before the jury. If then the words *a bill of scandal* be so referred, the verdict is certain enough; if, as is said, their meaning cannot be ascertained, then they may be rejected as insensible. The verdict finds the issue without them; and wherever this is done, and the jury go further and find what is not in issue, the latter may be rejected. *7 Bac. Abr.* 20.

TILGHMAN C. J. The counsel for the *Commonwealth* have considered the entry of the verdict as a clerical error, and as such, subject to amendment. There is no doubt but a clerical error may be amended, even in a criminal case. But there does not appear to be any clerical error in this instance. If there be an error, it is not of the clerk, but of the jury. We must suppose that the verdict was entered as it was given.

*A bill of scandal* is a singular expression. A good many of the jury were *Germans;* perhaps it is a translation from the *German* to the *English* language. The counsel for the defendant say, that according to the *German* understanding it means a scandalous report. For my own part, I cannot affix any definite meaning to it, and therefore I cannot say, that it is an offence of the nature of that, which is charged in the indictment. But that is not the only objection to this verdict. If it had said, guilty of the bill of scandal, with which the defendant stands charged, or even guilty of the bill of scandal, without more, we should have been certain that the jury referred to the indictment; and then perhaps it might have been fairly construed " guilty of the offence charged in the " indictment." But the words are guilty of *a* bill of scandal. *A* bill, is very different from *the* bill. Grammatical niceties should not be resorted to without necessity. But it would be extending liberality to an unwarrantable length, to confound the articles *a* and *the*. The most unlettered persons understand that *a* is indefinite, but *the* refers to a certain object. When the jury say, that the defendant is guilty of writing *a bill of scandal*, I am not assured that they mean the scandalous matter mentioned in the indictment; and I therefore cannot say, that they have found him guilty of the offence, for which he was indicted. This verdict ought not to have been received. The court should have informed the jury of its

imperfections, and have desired them to express their meaning plainly. I am of opinion that the judgment is erroneous, because it does not appear on the record, that the defendant was found guilty of the offence charged in the indictment.

YEATES J. was of the same opinion.

BRACKENRIDGE J. The word libel is a translation of the word *libellus*, and means a little book, or paper. But it must be defamatory to make it a *libel* in the legal acceptation of the term. It must also be malicious. It is so defined by the commentator. 4 *Blac.* 149. " Malicious defamation of any person, made public by writing, printing, signs or pictures." Malice then is a necessary ingredient to constitute a libel. Malice must be laid in the indictment, otherwise there is no charge, to which the defendant would be bound to answer; no charge on the face of the indictment, which would warrant a sentence.

I admit this is not the doctrine of lord *Mansfield* in the case of *The King* v. *Woodfall*, 5 *Burr.* 2666. He asserts " that whether the paper was a libel, was a *question of law* " *upon the face of the record;*" and he adds what he thinks proves it, " that after a conviction, a defendant may " move in arrest of judgment, if the paper is not a libel." Doubtless, after conviction, the defendant may allege in arrest of judgment, that taking the fact as found by the jury, or implied in their finding, *viz.* that the writing was published by the defendant, it *did not amount to a libel.* For *maliciously* publishing, is a fact which must go to constitute the offence, and which must be found by the jury. He goes on to say " no proof of *express malice* ever was required, and in " most cases is impossible to be given." That is all true; and the malice may be inferred from the writing. But it is the jury that must infer it. It is a fact that must be found by the jury; for maliciously publishing must be charged, and it is the whole of this fact that must be found. But it is fallacious to infer from this, that without such finding he could infer the guilt of libelling. *Lord Mansfield* laid down *the inference of malice to be matter of law;* but the doctrine was exposed by *Junius.* In his letter to lord *Mansfield* of

1810.

SHARFF
*v*
COMMON-
WEALTH.

*Nov.* 14th 1770, *Junius* observes: " The doctrine you have " constantly delivered in cases of libel, is another power- " ful evidence of a settled plan to contract the legal power " of juries, and to draw questions inseparable from fact, with- " in the *arbitrium* of the court. In criminal prosecutions the " malice of the design is confessedly as much the subject of " consideration to a jury, as the certainty of the fact. Why " force twelve men to pronounce a fellow subject a *guilty* " *man*, when almost at the same moment you forbid their " inquiring into the only circumstance, which in the eye of " law and reason constitutes guilt, the malignity or innocence " of his intentions? Your charge to the jury in the pro- " secution against *Woodfall* contradicts the highest legal " authorities, as well as the plainest dictates of reason. It " began as usual with assuring them that they had nothing " to do with the law; that they were to find the bare fact, " and not concern themselves about the legal inferences " drawn from it; that the jury were not competent judges " of *the law*, and that it did not fall within their jurisdic- " tion; and that as to them, the malice or innocence of the " defendant's intention, would be a question *coram non ju-* " *dice*. But with the simple information of common sense, I " assert that if a jury, or any other court of judicature (for " jurors are judges) have no right to enter into a cause or " question of law, it signifies nothing whether their decision " be or be not according to law. Their decision is in itself a " mere nullity; the parties are not bound to submit to it; and " if the jury run any risk of punishment, it is not for pro- " nouncing a corrupt or illegal verdict, but for the illegality " of meddling with a point on which they have no legal au- " thority to decide."

These observations bear upon the point before us. For if malice is a fact which must be found by the jury, the first question here will be, has it been found? It is charged in the indictment, and the plea goes to it, *not guilty*. The finding guilty goes to the plea, and had nothing else been added, I admit that the words of reference *in manner and form* would have been included, and would have embraced the fact of *maliciously publishing*. But the generality of the term *guilty* is restrained by the special finding, guilty

*of a bill of scandal,* and we are reduced to the necessity of inquiring what a bill of scandal is, of which the defendant is found guilty. *Billa vera* is an indorsement which the grand jury used to make upon the indictment, sent up to them, and now in *English, a true bill.* 4 *Black.* 305. A bill of scandal must therefore mean an indictment of scandal. Scandal, and slander, mean the same, in the language of the law. *Scandalous* and slanderous words; *scandalous* words that may subject a man to the penalties of the law; *scandalum magnatum,* or words spoken in derogation of a peer, a judge, or other great officer of the realm. 3 *Black.* 122, 3. *Esclandre,* is the word which is used in the statute 3 *Ed.* 1. c. 34, and which in the statute book is translated slander. 2 *Rich.* 2. c. 5. I take it to be the same thing therefore as if the finding of the jury had been, *guilty of an indictment of slander.* But whether the finding guilty of an indictment, will carry with it the finding guilty of the defamatory writing as laid in the indictment, that is the publishing maliciously, is not so conclusively certain, as not to require some astutia to make out, which I am not satisfied with using in a criminal case. And unless I could make out *malice* to be included, I could not say that the guilt was found. For the guilt of publishing does not include *maliciously* publishing. A libel might be innocently published by a man who could not read, and not knowing what it was; as if imposed upon him for an *old ballad.* And though he might give this in evidence, in which case the jury ought not to find guilt, yet there is a fallacy of lord *Mansfield* in the application of this principle in *Woodfall's* case. For though where the act is unlawful, the law implies a criminal intent, yet the intent is matter of fact, and unless on demurrer to evidence, as in other cases, it is left to the court, it is the jury only that can infer it.

. But supposing guilty in manner and form as laid in the indictment, to be included in the finding in this case, the pinch remains still in the term, *a* bill of scandal. It is not *the* bill. *The* is an article which particularizes the subject of which we speak. A, an, one, any one, are all words of the same family. It is as if said, one *bill of scandal. Horne Tooke, Epea Pteroenta* 324. So that the term *a,* does not attach necessarily to the bill or indictment to be tried. It is impossi-

SHARFF
v.
COMMON-
WEALTH.

ble not to have a strong inclination of mind to believe that the jury meant the indictment tried; but there is a possibility, that they might from their own knowledge have some evidence of, and might mean, another bill; and if such laxity in the finding was admitted, it might endanger the certainty of convictions, and let in a license to jurors to wander from the bill before them, and to think of other offences of a like nature, of which they might believe the defendant guilty. As in my knowledge in the western parts of *Virginia*, bordering on Pennsylvania, where, on an indictment for stealing sheep, they found the defendant guilty, because in their own knowledge, or from some evidence before them, he had stolen *wool.* They had thought that it all came to the same thing. Let the thing stolen be what it might be, he was a thief, and ought to be found guilty.

On this ground therefore I think the judgment must be reversed.

*Judgment reversed.*