# 𝔠𝔥𝔞𝔯𝔩𝔢𝔰𝔱𝔬𝔴𝔫.

## STATE v. NEWSOM.

Decided September 7, 1878.

1. Upon an indictment under the act concerning malicious and unlawful shooting, &c. (Code 1869, ch. 144, §9), which charges, that the prisoner, "*with a certain pistol or revolver, &c., feloniously and with his malice aforethought, did shoot one Lewis Dempsey, Jr., with intent,*" &c., the jury found the prisoner "*guilty of unlawful shooting, with intent,*" &c., without saying whom he shot, and fixed the term of his imprisonment in the penitentiary at one year. HELD:

   The court did not err in overruling the motion to quash, and in overruling the demurrer to the indictment, because, although it alleged the weapon in the alternative, as a "*pistol or revolver,*" the expression "*or revolver*" was mere surplusage, and could be rejected, and therefore need not be proved.

2. The cause was continued twice by the State, and once "for reasons appearing to the court.". HELD :

   It is the duty of the prisoner to show, that that continuance was not granted for the causes declared by statute. Code ch. 159, §25; as the court will not reverse, unless error appear affirmatively in the record; and the prisoner is not therefore entitled to a discharge.

3. No judgment can be entered upon the verdict, because it is too vague, indefinite and uncertain.

1878
August Term.

The circuit court of Logan county, on the 25th day of April, 1878, rendered judgment against James Newsom on an indictment against him for felony.

This is a writ of error, granted on the petition of said Newsom to the judgment of said court then rendered.

Hon. Evermont Ward, judge of the ninth judicial circuit, rendered the judgment complained of.

The facts of the case sufficiently appear in the opinion of the Court.

*C. C. Watts*, of counsel for plaintiff in error, relied on the following authorities :

1 Bishop's Crim. Pro. (2d ed.) §1006 ; *Id.* §1016 ; 21 Pick. 509 ; Starkie's Crim. Pl. 392 ; 2 Hawk. Ch. p. 47, §9 ; 4 Burr. 2073 ; 4 W. Va. 729 ; 3 Gra. & Wat. New Trials 1378, *et seq.* and cases cited ; *Id.* 1384 *et seq.,* and cases cited ; Archbald Crim. Pr. & Pl. 666.

*Robert White, Attorney General,* for the State, cited the following authorities :

7 Gratt 592 ; 5 W. Va. 508 ; Code 721, §25 ; 2 Va. Ca. 363 ; *Id.* 564 ; *Id.* 74 ; 1 Rob. 731 ; 8 Gratt. 661 ; 1 Bish. Cr. Pr. §106 ; 21 Pick. 509 ; 3 Gra. & Wat. New Trials 1377 ; 4 W. Va. 729 ; 28 Gratt. 922.

MOORE, JUDGE, delivered the opinion of the Court:

At a circuit court continued and held for Logan county, on the 13th day of October, 1876, the grand jury found an indictment against the defendant, consisting of the following two counts:

"That James Newsom, on the 1st day September, 1876, in the said county, with a certain pistol or revolver then and there loaded with gun powder and leaden balls, feloniously and with his malice aforethought, did shoot one Lewis Dempsey, Jr., with intent him the said Lewis Dempsey, Jr., then and there to maim, disfigure, disable and kill, against the peace and dignity of the State. And the jurors aforesaid upon their oaths aforesaid, do further present, that James Newsom, on the 1st day of September, 1876, in said county, with a certain revolver then and there loaded with gun powder and leaden balls,

unlawfully, feloniously and maliciously did shoot one Lewis Dempsey, Jr., then and there to maim, disfigure, disable and kill, against the peace and dignity of the State."

On the same day "came the State by her attorney, as well as the defendant by C. W. Smith, Esq., his attorney, who moved the court to quash the indictment in this cause, and demurred to each and every count thereof; and for plea saith, that he is not guilty in manner and form, as the State in her indictment against him hath alleged, and of this he puts himself upon the county; and the State doth the like; and this cause is continued until the first day of the next term."

On motion of the defendant he was admitted to bail. On April 23, 1877, the defendant appeared; and on motion of the attorney for the State, the cause was continued; and on the 24th day of September, 1877, the defendant appeared, "and for reasons appearing to the court," the cause was continued; and on the 22d day of April, 1878, the prisoner appeared "in his own proper person;" and the prisoner moved the court to quash the indictment and each count thereof, which motion was overruled, as to the first count, and sustained as to the second count; and the prisoner thereupon demurred to the indictment and the first count thereof, which demurrer was overruled, and he thereupon pleaded "not guilty in manner and form as alleged in the indictment;" and issue was joined; and a jury came, and after hearing the evidence, &c., returned a verdict in the following language: "We the jury, find the prisoner, James Newsom, guilty of unlawful shooting, with intent to maim, disable, disfigure and kill, and ascertain the term of his confinement in the penitentiary at one year; and we find him not guilty of malicious shooting."

Thereupon the prisoner moved the court to set aside the verdict, as being contrary to the evidence, which motion was overruled; and thereupon the prisoner

moved in arrest of judgment, which was also overruled; and sentence was pronounced according to verdict.

Upon the writ of error allowed, the prisoner here assigns as error : First, overruling his motion to quash the first count in the indictment. Second, overruling the demurrer to the indictment and first count thereof. Third, in putting him on trial after the third continuance of the cause. Fourth, in refusing to set aside the verdict on account of uncertainty therein.

The offense is declared by statute, Code 1869, chapter 144, secton 9: "If any person maliciously shoot * * with intent to disfigure, disable, maim or kill, he shall, except where it is otherwise provided, be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall, at the discretion of the jury, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars."

The first and second assignments of error are merely technical, not even urged in argument. It would be exceedingly technical, to quash an indictment, or sustain a demurrer thereto, because it laid the weapon in the alternative. A revolver is a pistol; and even if it should be material to allege a weapon in such a case, under the plain rule, that all, that is surplusage, may be rejected as mere waste material to be passed unnoticed, and need not be proved," the alternate allegation, "or revolver," if rejected, would still leave enough to meet the requirement of the law; and the indictment is therefore good. Bish. Crim. Pro. §229, &c.

The third assignment is not argued; prudently so. The defendant must show, that the case was not continued upon his motion, or for the statutory cause. The record shows, that it was twice continued at the instance of the State; but the other continuance was "for reasons appearing to the court." For aught this Court knows,

that continuance was at the instance of the defendant, or granted for the causes declared by statute. Code, ch. 159, §25. It was in his power, and it was his duty, to show, that it was not; and having failed to do so, he must take the consequences, and is not entitled to a discharge under the statute. Code, p. 721, §25.

The fourth objection is, that the verdict is uncertain, because it does not find the prisoner guilty of unlawful shooting, "as charged in the indictment;" nor does it find, whom the defendant unlawfully shot, if any person. The 20th section of chapter 159, Code, p. 720, declares, that, "on any indictment for maliciously · shooting stabbing, cutting or wounding a person, or by any means causing him bodily injury, with intent to kill him, the jury may find the accused not guilty of the offense charged, but guilty of maliciously doing such act with intent to· maim, disfigure or disable, or unlawfully doing it, with intent to maim, disable, or kill such person."

In Randall's case, 24 Gratt. 644, the jury, on an indictment under statutes similar to ours, by verdict found the prisoner " guilty of malicious shooting," without saying whom he shot. Moncure, Judge, delivering the opinion of the court on that point, merely states, that in his petition for the writ of error the prisoner "assigned sundry errors in the said judgment, one of which is, that the verdict found him guilty of no offense at all, having found him guilty merely of malicious shooting. The Attorney-General rightly admitted, that this error was well assigned: and that for this error the judgment would have to be reversed. If this were the only error in the case it would have to be remanded to the circuit court for new trial, to be had therein upon said indictment.

The judgment of the court, on that point, was " that the verdict found by the jury in this case is fatally defective in finding the prisoner guilty of ' malicious shooting' merely, which, in itself, is no offense at all; and if that were the only error in the judgment, it

would be proper to reverse the judgment, set aside the verdict, and remand the cause for a new trial," &c.

In *Hoback's case*, 28 Gratt. 922, *Judge Moncure*, in commenting on *Randall's case*, at page 928, explanatory of his meaning and in discriminating the *Randall case* from *Hoback's*, says: "Now if the jury, in response to the indictment, and to the question propounded to them by the clerk, when they came into court to render their verdict, had simply pronounced the prisoner "*guilty*," it would have been all sufficient, and have had the same effect, as if they had repeated after the word '*guilty*,' the whole charge, contained in the indictment, in manner and form as therein made; but they found him guilty 'of *malicious shooting*,' without saying, whether anybody, or if anybody *who*, was shot, and with what intent the shooting was, and without referring to the indictment; and it did not even appear from the record, that the finding was endorsed upon the indictment. The finding was of a single fact mentioned in the indictment, to-wit: malicious shooting, which in itself was no felony, and indeed not a criminal offense at all."

In *Hoback's case*, which was affirmed by the Court of Appeals, the verdict of the jury was: "We, the jury, find the defendant, John Hoback, not guilty of malicious shooting, *as in the within indictment charged*, but guilty of unlawful shooting, with intent to maim, disfigure, disable and kill, and fix his term of confinement," &c. It was assigned as error, that "nowhere in this verdict does the jury say *who* it was, that petitioner unlawfully shot," &c. *Moncure, J.*, delivering the opinion, reasoned as follows: "A verdict of a jury in a criminal case must always be read in connection with the indictment; and if it be certain, upon reading them together, what is the meaning of the verdict, it is sufficiently certain. The indictment is never copied or repeated in the verdict; nor need the charge be set out in the latter with anything like the same particularity, with which it is set out in the former.

" The verdict refers to and adopts the indictment, in whole or in part, either expressly or by plain implication, when the indictment contains but one charge, of which the accused must be either guilty or not guilty; and the and the verdict simply is, ' we, the jury, find the prisoner guilty,' or ' not guilty,' as the case may be. What then is the meaning of the words of the verdict? Guilty or not guilty of what? Of course, of the offense charged against him in the indictment.

"Now, if we take away the indictment, the verdict, taken by itself, will be nonsense. But, taken in connection with the indictment, as it always is and must be taken, it is perfectly plain. The verdict is a direct response to the issue of guilty or not guilty, which the jury are sworn to try. It is a direct response to the question, which, after the jury have come into court and announced their agreement in their verdict, the clerk, in the presence of the prisoner, and after telling the jury to look upon him, propounds to them, viz: 'How say you? Is he guilty of the offense whereof he stands indicted, or not guilty ?' 3 Rob. Pract., (old ed.) 262.

" But sometimes an indictment contains several counts, or an offense charged in one count is embraced in a generic offense, which embraces several species of the same offense. If in such cases the jury find the accused guilty of all the offenses, charged in the several counts, or of the whole offense, charged in an indictment containing but one count, they have nothing to do but to find him guilty, unless the offense charged be murder, in which case the statute requires them further to find, whether he is guilty of murder in the first or second degree.

"But if in such cases the jury find the accused guilty of some only of the offenses, charged in the several counts, or only of some specific offense, embraced in a larger offense, charged in one count, a simple verdict of guilty or not guilty will not do; but the jury must sufficiently designate the counts, under which, or the speci-

fied offenses of which, they find the accused guilty, to make their meaning intelligible.

"This is a case of the latter class, in which it was not enough for the jury to find a verdict simply of guilty; but it was necessary for them to designate sufficiently the specific offense, of which they intended to find the accused guilty, reading their verdict in connection with the indictment, as before stated. Have they done so in this case?

"The law, under which this case arises, may be found in the Code of 1873, ch. 187, §10, and ch. 202, §29. Chapter 187, § 10, declares, that 'if any person maliciously shoot,' &c., any person, 'with intent to maim, disfigure, disable or kill, he shall,' &c. 'If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall,' &c.

"Under that chapter and section, the indictment against the accused might have contained two counts, one for doing the act maliciously, and the other for doing it unlawfully only; and the accused, in that case, might have been found guilty under either of the counts, according to the facts as proved before them.

"But ch. 202, §29, declares, that 'on any indictment for maliciously shooting,' &c., a person, 'with intent to kill him, the jury may find the accused not guilty of the offense charged, but guilty of maliciously doing such act with intent to maim, disfigure or disable, or unlawfully doing it with intent to maim, disfigure, disable or kill such person.'

"The indictment in this case was under the latter chapter and section, that is, for maliciously shooting a person with intent to kill him. The jury certainly intended, under the direction and authority of that chapter and section, to find the accused not guilty of the offense that is charged, that is of maliciously doing the act, but guilty of unlawfully doing it, with intent to maim, disfigure, disable or kill, such person. Have they sufficiently indicated their intention in their verdict?

1878
August Term.

State
v.
Newsom.

"We think they have.

"Now look at the verdict in connection with the indictment and with the section, under which it was found, and how can we understand the verdict otherwise?

" 'We, the jury, find the defendant, John Hoback, not guilty of maliciously shooting, as in the within indictment charged.' This certainly is plain enough, and sufficiently ignores the charge of maliciously doing the act. It expressly refers to the indictment, on the back of which it is written. And it thus proceeds after a mere comma, 'but guilty of unlawfully shooting with intent to maim, disfigure, disable and kill, and fix his term of confinement in the State penitentiary at two years.' Are not the meaning and effect of the verdict and indictment, construed together, precisely the same, as if the words 'of his malice aforethought' were not in the indictment, the word 'unlawfully' was there in their stead, and the verdict of the jury was simply a verdict of 'guilty'? Can we place upon the verdict so unreasonable a construction, as to make it doubtful, whether the jury intended to find, that Brown Seagle was the person shot, or that no person was in fact shot? See 1 Chitty Cr. Law, 636 marg. and *seq;* 2 Va. cases 231, 273."

In *Canada's case,* 22 Gratt. 899, the indictment was for the feloniously and maliciously cutting, wounding, stabbing and striking, &c., J. H. High, with intent to maim, disfigure, disable and kill him, &c.; each count, there being three, charged, that the accused " *did make an assault* " on the body of High. The jury found " the prisoner not guilty of the malicious cutting and wounding, as charged in the within indictment, but guilty of an assault and battery, as charged in the within indictment, and assess his fine at five hundred dollars." The court gave judgment according to the verdict for the fine, and superadded imprisonment in the county jail. Upon writ of error the judgment was affirmed; as consistent with the statutes of Virginia, Code, chap. 208, §27, &c.

In that case *Moncure*, J., said: "A person cannot be convicted of any offense, even though it be of a misdemeanor, under an indictment for felony, unless the offense, or the acts constituting it, be charged in the indictment; and therefore the expression, as therein charged in the indictment, seems to mean nothing more than the law would imply in their absence. Indeed, they seem to serve an appropriate, if not a necessary, purpose in applying the general words 'an assault and battery,' and making the verdict more certain, as to the particular assault and battery, of which the accused was indited to be convicted. In fact, these words are used in conformity with the express language of the statute, which authorizes a conviction for misdemeanor under an indictment for felony. That statute declares, that a person indicted of a felony, and acquitted of part, and convicted of part of the offense charged, shall be sentenced for such part as he is so convicted of, *if the same be substantially charged in the indictment*, whether it be felony or misdemeanor. Now, when a person indicted of a felony is acquitted of the felony, and convicted of a misdemeanor, substantially charged in the indictment, it cannot be inappropriate, to say the least, for the jury expressly to find, that the misdemeanor, of which they find him guilty, is the same, which is charged in the indictment."

In the case of *State* v. *Hudson*, 74, N. C. 246, *Bynum*, J., delivering the opinion of the court said: "The defendant was indicted for an assault and battery, in bill drawn in the ordinary form. The jury for their verdict returned, '*that the said Cephas Hudson is guilty of shooting.*' Shooting at what? In what direction? If at any human object, was that object within the carrying distance of the gun, so as to constitute an assault? If the indictment had charged, that the assault was made by shooting at the prosecutor, *possibly* the verdict could be sustained by the reasonable certainty of its meaning, to be obtained by construing the bill and verdict together. But the instrument contains no such charge, and the verdict

standing by itself is therefore senseless, certainly it is not responsive to the indictment. The courts should never allow such absurd and irresponsive verdicts to be recorded. They should have the jury to correct them, so as to be in conformity to law, and to present an intelligent record. *State* v. *Arrington*, 3 Murph. 571."

This decision, whilst approved as correct, was not considered by *Judge Moncure*, as "at all in conflict with" his opinion in *Hoback's case.*

In *Dyer's case*, 23 Pick. 402, on an indictment charging, that certain specified goods of one *Endicott* had been burglariously stolen, &c., by some person unknown, and that *Dyer* received, and aided in the concealment of said goods, well knowing the same to have been stolen ; the jury found a verdict as follows: "the jury find said *Dyer* guilty of receiving and aiding in concealing stolen goods, knowing them to be stolen, but not knowing them to have been burglariously stolen." Upon writ of error the Supreme Court held, "that the verdict did not find the facts charged, that no judgment could or ought to have been rendered upon it, and that the judgment, which was rendered, must be reversed."

*Shaw, C. J.*, said: "It is said, that the jury may find matter, that is immaterial and not within the issue, and that such superfluous matter will not vitiate the verdict. This is true, if the issue is found ; but the material facts, put in issue, must be found, in order to warrant a judgment. And in any way, in which we can view this verdict, we think it impossible to perceive, that it finds the defendant guilty of the material acts constituting the offense, and charged in the indictment. It finds him guilty of receiving stolen goods, knowing them to be stolen, but not the goods mentioned in the indictment, or guilty in manner and form, &c., or any thing equivalent." * * * * * "It is said, that by making a pause after the word '*stolen*,' knowing them to be *stolen*, and treating the last clause, '*but not knowing them to be burglariously stolen*,' as surplusage, it may be considered

a good general verdict. But we cannot perceive, that such a reading, if justifiable, would aid it. It would still fail of finding the goods, stated in the indictment, or any of them, to have been received, which was the matter in issue; and such verdict would be true, if he had received any stolen goods, knowing them to be stolen, though he had received no part of the goods stolen from *Endicott.*"

In *Sharff's* case , 2 Binn. 514, upon an indictment for *libel*, the jury's verdict was: "Guilty of writing and publishing *a bill of scandal.*" &c. The judgment on the verdict was reversed, because the defendant was not found guilty of the offense, charged in the indictment. *Tilghman* C. J,, in his opinion said : "If it had said, guilty of the *bill of scandal*, with which the defendant stands charged, or even guilty of *the* bill of scandal, without more, we should have been certain, that the jury referred to the indictment ; and then perhaps it might have been fairly construed 'guilty of the offense, charged in the indictment.' But the words are guilty of *a* bill of scandal. *A* bill is very different from *the* bill. Grammatical niceties should not be resorted to without necessity. But it would be extending liberality to an unwarrantable length, to confound the articles *a* and *the*. The most unlettered persons understand, that *a* is indefinite, but *the* refers to a certain object. When the jury say that the defendant is guilty of writing *a bill of scandal*, I am not assured, that they mean the scandalous matter, mentiond in the indictment; and I therefore cannot say, that they have found him guilty of the offense, for which he was indicted. The verdict ought not to have been received." *Yeats*, J. was of the same opinion.

*Breckenridge*, J., in his opinion, among other views of the case said : " It is impossible, not to have a strong inclination of mind to believe, that the jury meant the indictment tried ; but there is a possibility, that they might, from their own knowledge, have some evidence of, and might mean, another bill; and if such laxity in

1878
August Term,

State
v.
Newsom.

the finding was admitted, it might endanger the certainty of convictions, and let in a license to jurors, to wander from the bill before them, and to think of other offenses of a like nature, of which they might believe the defendant guilty." To illustrate, he gave an instance in his knowledge, "where, on an indictment for stealing *sheep*, they found the defendant guilty, because in their own knowledge, or from some evidence before them, he had stolen *wool*. They had thought that it all came to the same thing. Let the thing stolen be what it might be, he was a thief, and ought to be found guilty."

My attention has been directed to other cases; but I deem it unnecessary to cite them ; and in fact I have cited now more, than were really necessary to illustrate my opinion, that the verdict in the case before us is not sufficient to found the judgment, that was rendered, upon it. The verdict does not in any way indicate, that it was intended to respond to the charge, made in the indictment. For aught we know, the jury may have had in their minds the shooting of a different person, than the one alleged in the indictment. It is too vague, indefinite and uncertain. Had they designated the person shot, if any, or had they added *"as charged* in the indictment," or used language to the same effect, so as to have made it plain, that they meant the offense as charged, the judgment might well have been entered, but when they simply say : "guilty of unlawfully shooting with intent to maim, disable, disfigure and kill," it is not of that class of verdicts, of which the real meaning can be obtained by construing the indictment and verdict together; and, standing by itself, it is not responsive to the indictment, and is senseless.

I cannot approve of taking liberty from man, and placing upon him the infamy of felony, on a verdict so irresponsible and uncertain, a verdict, that neither alludes to the indictment, nor uses language to show conviction of the crime charged. If the jury intended the offense, as charged in the indictment, it should have

Syllabus 3.

said so; and the court should have seen, that the verdict so declared, or have refused to receive it.

The judgment should be reversed and annulled, the verdict set aside, and the case remanded to the circuit court for further proceedings to be had therein, in conformity with the foregoing opinion, and according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED, CAUSE REMANDED.