STATE OF WEST VIRGINIA

*v.*

WANDA JEAN WOTRING

(No. 14019)

Decided June 9, 1981.

*Leo Catsonis and Thomas L. Linkous* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *S. Clark Woodroe*, Assistant Attorney General, for defendant in error.

McGRAW, JUSTICE:

The appellant, Wanda Jean Wotring, was convicted of possession of marihuana with intent to deliver by a jury June 1, 1976, in the Circuit Court of Tucker County. She was sentenced to spend one to five years at the West Virginia State Prison for Women at Pence Springs and was fined $15,000.* She assigned fifteen errors in her petition for appeal, the same errors upon which she based an unsuccessful motion for a new trial made to the court below. In her brief, she consolidates or abandons most of the errors initially assigned and now asks us to review six assignments of error, including one raised for the first time here. The appellant's contentions are as follows: the search of her residence was illegal; she was not given a timely *Miranda* warning; she did not personally enter her not guilty plea; the state did not prove she was in possession of the marihuana; the trial judge's comments in open court were prejudicial; and, the denial of probation violated her due process rights. After reviewing the record and the briefs filed in this case, as well as the law relevant to the issues raised, we do not find sufficient merit in the appellants contentions to reverse, and we affirm the judgment of the lower court.

* The Court is apprised by the appellant's brief that the Governor of West Virginia, in the exercise of the power of executive clemency under provisions of article VII, section 11, of the Constitution, did, on December 22, 1977, grant the appellant a conditional pardon for the remaining period of the "sentence, plus $15,000.00 fine, so imposed upon her".

The appellant, forty-nine years of age at the time of her trial, owned about fifty acres in the Smokey Hollow Road area of Parsons, Tucker County, where she had lived on and off since her birth, occasionally leaving the area to work in the Washington-Baltimore region. Using a trailer as a starting point, she built a fourteen-room residence with a bubble-covered, heated swimming pool. Her three children were living with her at this residence at the time the events in this case transpired.

Late in the afternoon of April 28, 1976, Trooper J.L. Cunningham of the West Virginia Department of Public Safety filed an affidavit and complaint for a search warrant with Justice of the Peace Jerome B. DiBacco. Trooper Cunningham averred that he had cause to believe that marihuana was concealed in the residence of Wanda Jean Wotring and

> that the facts for such belief are that Wanda Jean Wotring has a reputation with me and my department over several months as being a trafficker in unlawful drugs, and numerous information from several types of persons as to such activities. Police officer Tpr. J.L. Cunningham did on the 16th day of April, 1976 witness a transaction on the premises of Wanda Jean Wotring between David Kisner and the daughter of the accused.

That evening police officers went to the appellant's residence and effected a search of the premises. She and her children were there at the time. In an upstairs bedroom, which Mrs. Wotring at the time identified as her room, Trooper Cunningham and Corporal M.M. Davisson found in an overnight case a clear plastic bag in which were eight smaller baggies containing what appeared to be marihuana. In the larger plastic bag they found a small white envelope on which was written "April 12, ten times twenty 200". According to the testimony of Trooper Cunningham, the appellant "was advised of her rights by Corporal Davisson in my presence at the time the evidence was found".

The bulk of the prosecution's case came from the testimony of several young people in the area, some of

whom had apparently arranged deals with the prosecution in exchange for their testimony. One witness testified that he had made four purchases of marihuana from Mrs. Wotring between December 1, 1975, and April 28, 1976, paying $20.00 per one-ounce baggie. Another prosecution witness testified that he purchased an ounce bag of marihuana from Mrs. Wotring at her home on April 9, 1976, for $20.00. He stated that the bag he purchased resembled the bags of marihuana shown to have been admitted in evidence at the trial. His visit at the Wotring residence and the purchase of the bag of marihuana from Mrs. Wotring were confirmed by the testimony of another student who accompanied him. Another prosecution witness testified that he made ten purchases of marihuana from Mrs. Wotring between December, 1975, and April 28, 1976, paying $20.00 for each one-ounce bag. A fourth witness testified that he bought three packages of marihuana at $20.00 each from Mrs. Wotring personally between December 1, 1975, and April 28, 1976. Each of the five witnesses identified the woman sitting at counsel table as Wanda Jean Wotring, the person who sold the marihuana. Trooper J.L. Cunningham was recalled as a witness by the defense to testify concerning a purchase he observed at the Wotring residence on April 6, 1976. In the course of his investigation, he accompanied a young man who purchased an ounce of marihuana for $20.00. He testified that the young man knocked at the door of the Wotring residence where he was met by a "very young girl" to whom he paid the $20.00 and who, a minute later, returned with a package of marihuana.

At trial the defense called as a witness a man who was dating Mrs Wotring and was a frequent visitor in her home. He testified that he had heard rumors that she was trafficking in drugs. He stated that he was an overnight guest in the home on April 27, 1976, and slept in the room where the bags of marihuana and the envelope were found by the law officers. He testified that on the morning of April 28, 1976, before he left for work, he searched the room for evidence of drugs for the purpose of determining whether the appellant was trafficking in drugs. He stated that he

"went through that particular case that they were supposed to have found marihuana in and it was not in there at that time."

Mrs. Wotring's two daughters testified that they had never seen their mother have any marihuana in her possession. A workman on the Wotring premises who was familiar with all areas of the house testified that he had never seen any evidence of marihuana or any transactions involving sales of marihuana thereabouts. Another witness who had visited in the Wotring home testified that he had been offered marihuana there, but never by Mrs. Wotring. Mrs. Wotring testified that the weekend or train case in which the marihuana was found was not her property, and that she had never opened the case. She denied knowing who placed the bag of marihuana in the case. She explained that when she stated to the police officers that the room in which the marihuana was found was her room, she was meaning to say all the rooms were her rooms. She testified: "I said this is my room. They are all my rooms."

The appellant testified at length on direct examination concerning her family history, her marriages, her employment, her property ownership, and the construction and maintenance of the fourteen-room house and swimming pool. She testified that she had two houses and seven trailer spaces for rent on her land, and that she received a monthly railroad retirement check arising from a deceased husband's employment. Her total monthly income, without outside work, was $1,250.00. From these facts the State attempted to paint a picture of a lifestyle which could not be justified by the appellant's income, with the implication that the appellant sold marihuana to support her standard of living.

The appellant sought to show that because of the comings and goings of strangers in and around her home, especially young people, anyone could have left in a bedroom the marihuana which was discovered by the law officers who conducted the search of her abode. She testified that her year-around swimming pool attracted many visitors, particularly young people from the commu-

nity, some of whom stayed overnight in the large house and used the various rooms in it to change in and out of their bathing clothes. Some of the guests were unknown to her, and some visitors caused damage to the pool and other property.

The appellant, however, did not respond on direct examination to the testimony of the prosecution witnesses concerning her possession and sale of marihuana, the substance of the charge in the indictment against her. Accordingly, cross-examination of the appellant was limited. Her son, age eighteen years at the time of the trial, was not called as a witness.

The fact that the marihuana was found in the house is not in issue; nor is there any question that the substance found in the search was, on scientific analysis, in fact marihuana. No questions appear to exist as to the identification and custody of the bags of marihuana and the envelope two important items of evidence.

In the charge to the jury, the trial court embraced five prosecution instructions and eight defense instructions. In the defense motion to set aside the verdict and to grant the appellant a new trial, and in her petition for appeal, it was asserted that the trial court erred in refusing defense instructions numbers 2, 9, 11 and 16. The error alleged is not briefed by counsel on appeal, and an examination discloses that the substance of the refused instructions was adequately covered in the trial court's charge to the jury. Thus, the refusal to give the offered instructions need not be further reviewed here. Accordingly, we proceed to the six major issues addressed by the parties.

## Search and Seizure

The appellant contends that the search warrant and subsequent search of her home were illegal, and the evidence obtained in the search should have been suppressed. The appellee contends that the information on which the warrant was based was far more than sufficient to establish probable cause, and the warrant and search were impeccably proper. The appellant's brief, after quoting the probable cause language contained in the

search warrant, notes that Trooper Cunningham never personally saw the appellant transfer or deliver a controlled substance to a buyer.

In *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980), we said at point one of the syllabus that:

> To constitute probable cause for the issuance of a search warrant, the affiant must set forth facts indicating the existence of criminal activities which would justify a search and futher, if there is an unnamed informant, sufficient facts must be set forth demonstrating that the information obtained from the unnamed informant is reliable.

In the instant case, the officer seeking the warrant saw a transaction between a member of the appellant's household and Kisner. Moreover, the officer's affidavit recited the informant's name, thus placing the warrant outside of the heightened reliability test used when an unnamed informant is involved. Additionally, it should be noted that the affiant stated that he saw the transaction occur on the appellant's premises, thus, giving rise to more than a mere belief that the thing to be seized could be found on the premises.

The appellant further complains that the justice of the peace issuing the warrant was not acting as an independent judicial officer but was merely acting as an agent for law enforcement authorities. She bases this contention on the fact that the justice of peace prepared the search warrant at the State Police office. In support of her contention, she cites our decision in *State v. Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975), where we held at syllabus point two:

> The constitutional guarantee under W.Va. Const. Article III, § 6 that no search warrant will issue except on probable cause goes to substance and not to form; therefore, where it is conclusively proved that a magistrate acted as a mere agent of the prosecutorial process and failed to make an independent evaluation of the circumstances surrounding a request for a warrant, the warrant

will be held invalid and the search will be held illegal.

In the *Dudick* case, the search warrant was prepared in the office of the prosecuting attorney and was signed by the justice of the peace without knowing who the informant was or whether the information for the search warrant was reliable or unreliable. There the Court held that the judicial officer had become a "mere agent of the prosecutorial process and failed to make an independent evaluation of the circumstances surrounding a request for a warrant". *Dudick, supra,* at syllabus point 2. The search warrant was, therefore, invalid, and the search was illegal. We find the facts in the present case to be greatly different from the facts in the *Dudick* case. In the case now on review, the affidavit, complaint, and search warrant were prepared by the justice of the peace after he had ascertained factual information from the police officer. The investigating officer informed the justice of the peace of numerous transactions and occasions incident to the area's drug traffic. The judicial officer satisfied himself that the facts constituted sufficient probable cause for the search warrant and, due to lack of space, worked with a typist in the State Police office for some 30 to 45 minutes in preparing the necessary papers.

We would be less than candid if we did not note that the warrant here was skeletal and inartfully drawn. As we stated in *Dudick,* however, probable cause goes to substance and not to form. Here the affidavit for the warrant contained an assertion that the affiant witnessed a drug transaction on the property to be searched. This and other information sufficient to support a finding of probable cause was made known to the magistrate and embodied in the affidavit. From this material the justice of the peace made an independent judicial decision that there was probable cause to believe that marihuana could be found on the property. An assertion, standing alone, that the justice of the peace used the State Police office to prepare the warrant will not conclusively prove that he acted as an agent for the prosecution. Accordingly, we

affirm the ruling of the trial court on these issues pertaining to the search and seizure.

While we affirm the lower court on this issue, we are troubled by the fact that the justice of the peace worked with the State Police personnel in preparing the warrant. Under the Code of Judicial Conduct, the forerunner of the Judicial Code of Ethics now in effect, justices of the peace were subject to the same canons as judges and justices. *State ex rel. Moats v. Janco*, 154 W.Va. 887, 180 S.E.2d 74 (1971); Code of Judicial Conduct, *Compliance with the Code of Judicial Conduct* (W.Va. Code 1973 Replacement Vol.). That code of conduct contained provisions, as does the present code of ethics, which require a judge to maintain the integrity and independence of the judiciary, Canon 1; to avoid even the appearance of impropriety, Canon 2; and, to act impartially, Canon 3. Moreover, we most recently said in *State ex rel. Skinner v. Dostert*, No. 14911 (W.Va. April 3, 1981), that "[i]n our adversarial system of jurisprudence, the judge is not a party, he is the referee." Slip op. at 19. This independent status is jeopardized whenever the judicial officer collaborates with law enforcement authorities, even when the purpose is merely clerical expediency. Except for the fact that the point is moot because he is no longer a magistrate, the justice of the peace here would be subject to discipline.

### Timely Miranda Warnings

The appellant contends that the lower court erred in admitting a statement she made to the officers conducting the search minutes before the officers discovered the marihuana in the travel case. The testimony of the officers conducting the search confirms that as they approached the room where the marijuana was found, they asked the appellant "whose room this was"? The appellant responded that "it was her room". Minutes later, the travel case was opened and the marihuana was found. At that time, the officers informed her of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

It is the appellant's position that the case against her had moved from the investigatory stage to the accusatory stage

by the time she informed the officers that the room was her room. The appellant relies on *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), where we repeated "that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." 233 S.E.2d at 714. Her attorneys argue that the admission of incriminating statements made prior to the giving of *Miranda* rights is clearly error and taints the entire proceedings. The appellant correctly recites the rule; however, we do not hold the rule to be applicable to the facts of this case. The appellant was not in custody, nor under arrest, but was in her own home and presumably free to leave until she was arrested. Although the officers clearly suspected the appellant of selling marihuana, a suspicion is not an accusation. When the marihuana was found, she was for the first time under arrest and stood accused. It was then, at the moment of arrest, that she was given the *Miranda* warning. *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977). *See also, Rhode Island v. Innis*, ___ U.S. ___, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

Obviously, in the context of this case, her statement is damaging in that it goes to show possession; however, this Court has never held that *Miranda* warnings must be given incident to a search when a person is not in custody or subject to custodial interrogation, and it is unwilling to create such a rule. We recognize that while *Miranda* warnings must be given whenever there is a significant deprivation of an individual's freedom of action, there is no requirement that *Miranda* warnings be given before the execution of a search warrant. Of course, a different approach would be required if a search warrant was obtained on information elicited during a custodial interrogation when the prisoner was not advised of his *Miranda* rights. That, however, is another matter which is not here in issue.

### Appellant's Possession of Marihuana

The appellant contends that the State failed to prove that the appellant possessed the marihuana. The appellee

responds that Mrs. Wotring was clearly proven to have possessed the marihuana. As counsel has not noted any errors in the court's charge to the jury, our only inquiry relates to whether the jury's finding of possession is supported by the evidence presented to it.

In our system of jurisprudence, the jury in a criminal case has a significant responsibility. We stated in point 9 of the syllabus in *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 494 (1956): "When the fact of guilt or innocence depends on the conflicting evidence of witnesses to the crime, the jury is the sole judge of the weight and the credibility to be given to their testimony".

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done. *See, State v. Craft*, 165 W.Va.741, 272 S.E.2d 46 (1980) and *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978).

The evidence presented to the jury shows that a search of the appellant's home uncovered a quantity of marihuana. Moments before the officers found the small plastic bags containing the marihuana inside a larger plastic bag which was inside the weekend case, the appellant told them that the room where the marihuana was located was her room. Later, she explained that all the rooms in the house were her rooms. As a witness at the trial, her direct testimony concerned many matters not connected with the presence of marihuana in her home and her possession of it with intent to deliver. Her cross-examination was limited and controlled by the areas of her direct examination. These factors, along with testimony of students who said they bought marihuana from the appellant at $20.00 per ounce, were for jury consideration.

In light of our careful review of the evidence and of the court's instructions to the jurors explaining their duties,

we are unable to say that the evidence of possession was manifestly inadequate so as to require reversal on this point.

### The Appellant's Failure to Personally Enter Her Plea

While the appellant was present at her arraignment and was represented by counsel, she complains that the record does not show that she personally entered her plea of not guilty. The record shows that when the indictment was read to her, her attorney responded, "not guilty". She cites *State v. Moore,* 57 W.Va. 146, 49 S.E. 1015 (1905), and *State v. McGee,* ____ W.Va. ____, 230 S.E.2d 832 (1976), for the proposition that her failure to personally voice her plea is reversible error. The State responds only with the argument that the error was invited.

*State v. Moore, supra,* and *State v. McGee, supra* were overruled on this point in *State v. Grimmer,* 162 W.Va. 588, 251 S.E.2d 780 (1979), *overruled on other grounds* in *State v. Petry,* ____ W.Va. ____, 273, S.E.2d 346 (1981). In *Grimmer,* we refused to apply the strict rule in *Moore* in favor of a more practical approach which turns upon the harm caused by the error and whether the error was waived. 251 S.E.2d at 785-86. The record here shows that the appellant was fully aware of the charges against her, and when the indictment was read to her, her attorney responded, "not guilty". This is all the law requires. Therefore, we find no error.

### Conduct and Comments of the Trial Judge

The appellant complains that a comment by the trial judge in the jury's presence constitutes reversible error. The appellee responds that the trial judge's comment was fair and innocuous. Before examining the comment in question, we restate our customary rule that:

> The trial judge in a criminal trial must consistently be aware that he occupies a unique position in the minds of the jurors and is capable, because of his position, of unduly influencing jurors in the discharge of their duty as triers of the facts. This Court has consistently required trial judges not to intimate an opinion on any fact in issue in any

manner. In criminal cases, we have frequently held that conduct of the trial judge which indicates his opinion on any material matter will result in a guilty verdict being set aside and a new trial awarded. *See State v. Pietranton,* 137 W.Va. 477, 72 S.E.2d 617 (1952); *State v. Summers,* 118 W.Va. 118, 188 S.E. 873 (1936); *State v. Shelton,* 116 W.Va. 75, 178 S.E. 633 (1935); *State v. Austin,* 93 W.Va. 704, 117 S.E. 607 (1923); *State v. Staley,* 45 W.Va. 792, 32 S.E. 198 (1899); and *State v. Hurst,* 11 W.Va. 54 (1877).

*State v. McGee,* 160 W.Va. 1, 230 S.E.2d 832, 835-36 (1976), overruled on other grounds in *State v. McAboy,* 160 W.Va. 497, 236 S.E.2d 431 (1977). We recently applied the rule in *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979), and applied an abbreviated version of it in *State v. Crockett,* 164 W.Va. 435, 265 S.E.2d 268 (1979). In *Burton* we noted that a comment which does not go to a material issue bearing on the witness' credibility will not result in reversible error. 254 S.E.2d at 139. There the trial court's comment was directed towards the witness' credibility, but the issue which was the subject of the comment was not "a *material* issue bearing on the witness' credibility". 254 S.E.2d at 139 (emphasis added). The lower court spoke about how the witness' testimony and prior statement could be construed consistently. It then went on to indicate that the decision on the matter was for the jury. We also noted in *Burton* that "a claim of improper trial court intervention must on occasion be viewed more broadly than from the narrow perspective of the incident itself." 254 S.E.2d at 138.

The comment of which the appellant complains took place during the cross-examination of one of the investigating officers who conducted the search of the appellant's home. Counsel was trying to elicit testimony to the effect that young people are often the targets of drug investigations, and that these investigations often require the officers to wear plain clothes. The prosecuting attorney objected to this line of questioning on the ground that it was irrelevant. The trial court responded: "Why is he asking these questions he is questioning his credibility and he has answered truthfully as I can see so far unless you think he hasn't. Are you going to disprove [sic] that he

wasn't dressed as he was?" Counsel responded "no". The objection to relevancy was sustained and the appellant's counsel took no exception to the ruling. He did, however, object to the court's comment.

Viewing the trial court's comments within the broad context of the exchange, we do not think it rises to the level of reversible error. First, under the *Burton* material issue test, the comment cannot be said to be going to a material issue as there was no evidence or theory developed at trial that the officer had perpetrated a ruse by dressing in a manner other than that to which he testified. Second, the officer's credibility on this matter was not in question. The appellant's counsel admitted that he was not trying to show the officer was dressed other than the way he testified. As we view it, the court's comment was intended to explain to counsel that the court was sustaining the state's objection because the line of questioning was pointless as no one was disputing the manner in which the officer was dressed. This view of the comment is supported by the fact that the court was interested only in whether counsel was going to impeach the officer on the matter of the officer's dress. This situation is similar to the one affirmed in *Burton* where the trial court commented on a minor piece of impeachment testimony which had no bearing on any material issue.

We are unwilling to find reversible error based on an incidental comment on a non-material issue having no bearing on the witness' credibility, especially when we are faced with a record containing substantial evidence against the accused. When viewed in the broad context of the case, it can hardly be said that this comment prejudiced the appellant. We are always troubled when a court makes a comment such as the one on review here. However, as *Burton* teaches, although the trial court should refrain from making comments on the credibility of a witness, a comment which does not go to a material issue bearing upon the witness' credibility will not result in reversible error. Accordingly, we find no reversible error on this issue.

## Denial of Probation

The issue relating to the sentencing in this case is rendered practically, if not technically, moot by a conditional pardon granted the appellant on December 22, 1977. As we read the document of pardon, the appellant is also conditionally relieved of the $15,000 fine imposed upon her.

Nevertheless, the issue of probation, at it arises in the context of this case, merits some discussion. Article 12 of chapter 62 of the West Virginia Code contains the law of this State regulating the probation of criminal offenders. Section 1 of that article provides that "[a]ny circuit court of this State shall have authority as provided in this article to place on probation any person convicted of a crime." Section 2 sets forth the categories of persons who shall be eligible for probation upon the conviction of a crime, and section 3 sets forth the factors which are to be applied in determing whether a criminal eligible under section 2 meets the requirements of section 3. Section 3 states that when it appears to the satisfaction of the court that the character of the offender and the circumstances of the case indicate that the offender is not likely to again commit crime, and that the public good does not require fine or imprisonment, the court may suspend the sentence and place the offender on probation. Except for clear statutory exceptions, this legislative grant of power clearly places the matter of probation within the sound discretion of the trial court. *State ex rel. Winter v. MacQueen*, 161 W.Va. 30, 239 S.E.2d 660 (1977). Additionally, "probation [statutes] have been held to be remedial in nature and subject to liberal construction, . . ." *State ex rel. Hanley v. Hey*, 163 W.Va. 103, 255 S.E.2d 354, 355 (1979).

Mindful of these rules, we are troubled by the severity of the sentence imposed on the appellant. At the time of sentencing, she was a widow supporting three children. Her crime was non-violent. Moreover, she had no prior criminal history. The record reflects that the trial court was aware of, and may have acceded to, intense community pressure surrounding this case. Be that as it may, we are unwilling to find error in the appellant's sentencing.

Moreover, as we have already noted, the appellant's conditional pardon renders this issue moot for all practical purposes.

In affirming the lower court on all the issues presented to us, we conclude that: the search of the appellant's residence was proper; she was properly advised of her *Miranda* rights; her arraignment was procedurally correct; the record contained enough evidence to warrant the jury's findings; the trial judge's comments did not constitute reversible error; and, the court acted lawfully in sentencing. Accordingly, the judgment of conviction of the Circuit Court of Tucker County is affirmed.

*Affirmed.*