383 S.E.2d 87

**STATE of West Virginia**

v.

**Deborah WHITE.**

**No. 18521.**

Supreme Court of Appeals of West Virginia.

July 20, 1989.

Betty L. Caplan and Cletus B., Hanley, Hanley & Caplan, Charleston, for Deborah White.

Brenda Craig Ellis, Asst. Atty. Gen., Charleston, for appellant.

**PER CURIAM:**

This is an appeal by the defendant, Deborah White, from an order of the Circuit Court of Roane County sentencing her to from one to ten years in the State Penitentiary for Women for grand larceny. On appeal she claims that the trial court erred in admitting two sequences of evidence. She also claims that the court should have placed her on probation. After reviewing the record this Court can find no reversible error. Accordingly, the judgment of the circuit court is affirmed.

During the September, 1985, term of the Circuit Court of Roane County, a grand jury indicted the defendant and her husband, Floyd Junior White, for the grand larceny of a natural gas compressor belonging to W. H. Hildreth. The defendant and her husband were tried jointly by a jury in June, 1986, after the defendant was clearly informed of her right to separate representation pursuant to Rule 44(c) of the West Virginia Rules of Criminal Procedure, and after she filed a formal, written waiver of that right.

In the course of the trial, the State introduced evidence showing that during the early morning hours of July 22, 1985, Deputy Michael Harper of the Roane County Sheriff's Office was investigating a complaint relating to the shooting of a dog. In the course of the investigation, he encountered Tom Wasmer, a conservation officer who was investigating another complaint. The two officers proceeded to a place called Tyson's Store so that they could talk.

While at Tyson's Store, Deputy Harper and Officer Wasmer heard a noise which sounded like metal banging on tin. They investigated and observed the defendant, her husband, and their ten-year-old son apparently attempting to load a natural gas compressor onto a truck. There were drag marks on the ground indicating that the compressor had been dragged out of an adjacent metal building. The compressor was on the ground next to the truck. The

tailgate of the truck was down, and there were chains attached to the truck. According to Deputy Harper, the defendant, her husband, and son were "wobbling" or trying to move the compressor. Upon seeing the situation, Deputy Harper and Officer Wasmer placed the defendant and her husband under arrest.

During trial the defendant and her husband denied committing any crime and essentially raised the defense of alibi. They testified that on the night in question they had left their home at approximately, or "going on", 2:00 a.m. to purchase some beer. They were not able to return because the water level in a stream had risen. They, therefore, parked their truck near the compressor station, where they were arrested. The defendant indicated that at the time they were observed by Officers Harper and Wasmer, she and her husband were transferring tools from the bed of their truck to the cab so that they could be locked up for the night.

A clear implication of the defendants' testimony was that since they had not left their home until approximately 2:00 a.m., they had not been in the vicinity of Tyson's Store for a long enough time to have removed the compressor from the building.

To rebut the defendants' testimony, the State called Harlan Little, who lived in the general vicinity of Tyson's Store. He testified that he had seen the defendant's husband's truck drive by his house at approximately 1:00 a.m. He explained that he happened to be on his porch at that time because he had heard a gunshot and had gone out to investigate. His investigation revealed that a dog had been shot. He reported the shooting to the authorities a short time later.

Deputy Harper's testimony on rebuttal substantiated Harlan Little's story as to the time of the events which Mr. Little described. When asked why he was in the vicinity of Tyson's store on the night of the alleged larceny, Deputy Harper testified:

A. I was called out on someone shooting a dog.

Q. And why you as opposed to some other deputy?

A. I was on call that night.

.    .    .    .    .

Q. And you were home at 1:23 a.m.?

A. Yes, sir, I was.

He indicated that he was notified of the complaint at that time. The testimony then proceeded as follows:

.    .    .    .    .

Q. And how do you know it was 1:23 a.m.?

A. It was logged in the book.

The clear thrust of the State's rebuttal evidence was that the defendants were in the vicinity of the alleged crime before their testimony indicated and that they had had time to drag the compressor from the building.

On appeal, the defendant's first assertion is that the trial court erred in allowing Deputy Harper to testify that he was investigating the shooting of a dog at the time of the July 22, 1985, incident. She claims that the evidence was adduced in an attempt to show other possible wrongful conduct by her husband and that it was designed to inflame the jury. She argues that proof of other crimes having no connection with the one for which the codefendant was on trial was irrelevant and inadmissible.

This Court believes that the evidence adduced is susceptible to varying interpretations. From Harlan Little's testimony it may be inferred that the defendant's husband shot the dog or that he was simply passing by at the time of the shooting. There is nothing in the testimony to connect the defendant herself with the shooting.

The evidence as adduced is hardly inherently inflammatory. The facts were related dispassionately. They were related in summary fashion and were devoid of gruesome detail. Deputy Harper merely testified that he had been informed of the shooting, and the focus of his testimony was upon the exact time that he had been informed, the point which the State wished to establish by its rebuttal.

Under Rule 404(b) of the West Virginia Rules of Evidence:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, *opportunity* ... (Emphasis added.)

The opportunity exception admits evidence, "where the other crime precedes, or is contemporaneous with, as a part of, the crime charged, and the circumstances surrounding the other crime are necessary to prove or to explain the crime charged." Note 2, *State v. Spicer*, 162 W.Va. 127, 245 S.E.2d 922 (1978).

In the present case, the shooting of the dog was reasonably contemporaneous with the incident surrounding the arrest of the defendant. The fact that the defendant's husband's truck was passing at the time of the shooting rather clearly tended to tie the defendant and her husband to the general vicinity of the crime charged at an early enough time for them to have removed the compressor from the building. In that sense, the Court believes that it was necessary to explain or prove the crime charged.

In syllabus point 4 of *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983), this Court stated:

> "The admissibility of evidence as rebuttal is within the sound discretion of the trial court, and the exercise of such discretion does not constitute ground for reversal unless it is prejudicial to the defendant." Syl. pt. 4, *State v. Blankenship*, 137 W.Va. 1, 69 S.E.2d 398 (1952), *overruled on other grounds, State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431, 432 (1977).

In the present case, given the particular nature of the crime charged and the testimony of the parties relating to the events of that night, this Court cannot conclude that the trial court abused its discretion by allowing the testimony relating to the shooting of the dog. The testimony was not inherently inflammatory; it did tend to prove opportunity; and it potentially contradicted the defendants' evidence relating to the time when they could have arrived at the scene of the alleged crime.

■ The defendant next claims that the trial court erred in admitting testimony to the effect that her husband had asked what he had to plead to to keep his wife from going to jail.

In the course of the trial, the defendant's husband, Floyd Junior White, took the stand and, in effect, denied that he was engaged in larceny at the time of his arrest. On cross-examination he was asked the following question:

> Did you ask Tom Wasmer in magistrate court, after he talked to you about your rights, did you ask him what you would have to plead to to get your wife out of this?

He indicated that he did not, though later he did state that he requested to talk to Officer Wasmer in magistrate court for the simple purpose of finding out what he was under arrest for. The following then ensued:

> Q. Now, isn't it a fact, Mr. White, that you knew you were had and you were trying to find out—cut a plea bargain in magistrate court that would get your wife out of this? Now, isn't that a fact?

He denied that that was a fact.

On appeal, the defendant claims that this testimony was inadmissible for two reasons. First, she argues that the statements were not voluntarily given since they were given by her husband after he had been arrested and was in a custodial situation.

The record rather clearly shows that the trial court conducted an in-camera hearing to determine the voluntariness of the statements. At that hearing it was shown that after the defendant's husband was arrested, he was informed of his *Miranda* rights. He then indicated that he wished to talk to Officer Harper. Officer Harper indicated that he should wait until they were at the magistrate's office. Once they arrived at the magistrate's office, the defendant's husband was again informed of his *Miranda* rights. He then signed a written

waiver of those rights. It was at the magistrate court that the defendant's husband made the remarks which were subsequently admitted into evidence.

There is no evidence that intimidation or coercion was used to extract the statements or to obtain the waiver of rights. There was some evidence that the defendant's husband had been drinking prior to the events giving rise to his arrest, but the evidence adduced by the State indicated that he was not inebriated at the time of his arrest.

In *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), this Court recognized that:

> The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into evidence of a criminal case.

Syllabus point 5, *State v. Starr, Id.*

Overall, the Court believes that the record supports the trial court's conclusion that the defendant's husband's statements were voluntary and that the State did prove the voluntariness of the statements by a preponderance of the evidence.

■ The defendant also claims that the admission of the statements could have been taken by the jury as testimony by a husband against a wife, in violation of the provisions of *W.Va.Code*, 57–3–3, which prohibits a husband from being compelled to testify against his wife.

A close examination of the remarks rather clearly shows that they did not constitute a revelation of confidential communications between the defendant and her husband. At the time of the trial it was clear to the jury that the defendant had been charged with a crime. This Court believes that the remarks did no more than reveal this fact and the fact that the defendant's husband was concerned about her fate and was willing to do what he could for her. The remarks did not constitute testimony by him against her.

■ Lastly, the defendant claims that the trial court abused its discretion in not granting her probation.

After the defendant was found guilty, a probation officer, William T. Reynolds, II, conducted an investigation of her background. Mr. Reynolds concluded that the defendant was a poor candidate for probation. He recommended that, if the court considered any sentencing alternative other than that of incarceration, the defendant should be sent to the diagnostic and classification unit at Alderson Prison to determine her suitability for probation.

Apparently pursuant to the probation officer's recommendation, the trial court sent the defendant to the Penitentiary for Women for diagnosis and classification. Thomas C. Stein, the consulting psychologist who examined the defendant during the diagnosis and classification process, found that:

> Given all these opportunities for intervention and remediation, there is a moderate likelihood that there will be no future involvement with the criminal justice system.

Additionally, however, he found that the defendant was extremely defensive and that she had asocial needs. He indicated that she showed a moderate tendency toward disliking rules, regulations, and authority figures, but he concluded that she was not antisocial or that she had a sociopathic personality disorder. He also indicated that, if she were released on probation, she would require assistance by skilled mental health professionals and that she would have to become involved in Al-Anon.

In syllabus point 1 of *State v. Rose*, 156 W.Va. 342, 192 S.E.2d 884 (1972), this Court indicated that "Probation is a matter of grace and not a matter of right." *See also State v. Lott*, 170 W.Va. 65, 289 S.E.2d 739 (1982). In line with this principle, the Court has repeatedly indicated that the granting of probation is within the sound discretion of a trial court. *State v. Miller*, 172 W.Va. 718, 310 S.E.2d 479 (1983); *State v. Drake*, 170 W.Va. 169, 291 S.E.2d 484 (1982); *State v. Wotring*, 167

**460**

W.Va. 104, 279 S.E.2d 182 (1981); *State v. Simon,* 132 W.Va. 322, 52 S.E.2d 725 (1949).

Given the fact that the probation officer concluded that the defendant was a poor candidate for probation and that the consulting psychologist was of the opinion that the defendant had problems requiring treatment and that there was only a moderate likelihood that there would be no future involvement with the criminal justice system, this Court cannot conclude that the trial court abused its discretion in refusing to grant the defendant probation.

For the reasons stated, the judgment of the Circuit Court of Roane County is affirmed.

Affirmed.