# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 15-0113** (Wood County 12-F-128)

**Terrance J. McGuirk,**
**Defendant Below, Petitioner**

**FILED**

**June 17, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Terrance J. McGuirk, by counsel Travis Sayre, appeals the order of the Circuit Court of Wood County, entered on November 6, 2013, sentencing him to incarceration in the state penitentiary for three consecutive terms of one to five years each upon his conviction of three counts of possession of a controlled substance with intent to deliver in violation of West Virginia Code § 60A-4-401(a). Respondent State of West Virginia appears by counsel Lara Kay Omps-Botteicher. Petitioner also has filed a supplemental pro se brief, which the Court deemed filed by order entered on September 21, 2015.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2012, Wood County police officers, after receiving information from Virginia State Police officers that petitioner would mail drugs as part of a controlled buy, apprehended petitioner on the sidewalk adjoining a nearby post office. He was carrying two envelopes containing methamphetamine. Subsequent to the investigatory stop, police obtained a search warrant and found additional methamphetamine and drug paraphernalia, including scales and plastic baggies, at petitioner's residence. Petitioner was indicted in May of 2012 on three counts of possession of a controlled substance with intent to deliver. At the conclusion of a jury

---

[1] Rule 4(b) of the West Virginia Rules of Appellate Procedure provides that

[a] party to an action before this Court who is represented by counsel, and where counsel has made a filing or appearance before this Court, may not file any pro se documents with the Court or make an oral argument before the Court, unless specifically permitted to do so by order.

1

trial, the jury found petitioner guilty on all three counts. Petitioner filed a motion for a new trial, but the motion was denied by order entered on November 6, 2013, and petitioner was sentenced as described above. This appeal followed.

On appeal, petitioner asserts, by counsel, six assignments of error: (1) the circuit court erred in failing to grant petitioner's motion to dismiss "because the search warrants lacked probable cause;" (2) the circuit court erred in failing to grant petitioner's motion to dismiss for lack of jurisdiction; (3) the circuit court erred in denying petitioner's motion to dismiss and motion for a new trial because the State failed to meet its burden of proof at trial; (4) the circuit court erred in sentencing the defendant; (5) the State failed to provide full disclosure of exculpatory or impeachment evidence; and (6) the State failed to meet its burden of proof because two officers offered conflicting testimony about the date on which the crimes were committed. Petitioner presents the following three additional assignments of error in his pro se supplemental brief: (1) he was "harmed by a structural error when the lower court changed the trial dates without giving timely notice and fail[ed] to timely rule on motions;" (2) he was "harmed by plain error in that the evidence at trial was gained from an unreasonable search and seizure;" and (3) he was "harmed by a plain error when the State did not provide full disclosure."[2] We generally review these assignments of error as follows:

---

[2] Prior to considering several of the asserted assignments of error, we necessarily must determine whether application of the "plain error" doctrine is required as to each. We have explained:

> "One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result" in the imposition of a procedural bar to an appeal of that issue. *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir.1994) (*en banc*), *cert. denied*, 513 U.S. 1196, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995). As the United States Supreme Court stated in *United States v. Atkinson*, 297 U.S. 157, 159, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557 (1936), "[t]his practice is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact." The "plain error" doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made.

> As a general proposition, this Court has discretionary authority to consider the legality and sufficiency of the trial court's charge under the plain error doctrine. *See* W.Va. R. Crim. P. 30 & 52.24 Our rules are nearly identical to the Federal Rules of Criminal Procedure. Historically, the "plain error" doctrine "authorizes [an appellate court] to correct only 'particularly egregious errors' . . . that 'seriously affect the fairness, integrity or public reputation of judicial proceedings[.]'" *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1, 12 (1985). (Citations omitted). Plain error warrants reversal "solely in those circumstances in which a miscarriage of justice would otherwise result."

(continued . . .)

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 641, 535 S.E.2d 484, 485 (2000).

We begin with petitioner's first assignment of error asserted by counsel, wherein he argues that there was no probable cause justifying the search warrants that led to the seizure of evidence. Police obtained search warrants for petitioner's residence, a white minivan that petitioner was observed driving, and the two packages that petitioner was carrying when officers approached him at the post office. Parkersburg Police Department Detective D.D. Sturm wrote the affidavit on which the warrants were based ("the Sturm affidavit"), and in it he related that petitioner volunteered to officers that the packages he carried contained methamphetamine. We have explained:

> "To constitute probable cause for the issuance of a search warrant, the affiant must set forth facts indicating the existence of criminal activities which would justify a search and further, if there is an unnamed informant, sufficient facts must be set forth demonstrating that the information obtained from the unnamed informant is reliable." Syllabus Point 1, *State v. Stone*, W.Va., 268 S.E.2d 50 (1980).

Syl. Pt. 1, *State v. Wotring*, 167 W. Va. 104, 104, 279 S.E.2d 182, 184 (1981).

The root of petitioner's argument is that he testified, at the suppression hearing, that when officers approached him at the post office, he did not (contrary to the Sturm affidavit narrative) state that he understood the officers were there because the packages contained methamphetamine, or otherwise admit to having methamphetamine. Without this admission, he argues, there was no probable cause for a search of his property because only one officer testified, without corroboration, that petitioner made this admission.

The Sturm affidavit related that local officers received information from Virginia State Police about a telephone call wherein petitioner told a confidential informant in Virginia that he

---

> *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816, 827 n. 14 (1982).

*State v. Miller*, 194 W. Va. 3, 17-18, 459 S.E.2d 114, 128-29 (1995). "To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 7, 459 S.E.2d at 118, syl. pt. 7.

would transmit methamphetamine from a particular post office on January 13, 2012. The Sturm affidavit further explained that officers with the Parkersburg Narcotics Task Force ("PNTF") conducted surveillance on that post office and approached petitioner when he arrived there. At that point, according to the Sturm affidavit, Agent J.S. Graham asked petitioner if he knew why the officers were there, and petitioner "stated because of the packages[. Agent] Graham asked what was in the packages and [petitioner] advised [m]ethamphetamine." Corporal Christopher Blevins, a West Virginia State Trooper and member of the PNTF, similarly testified at the suppression hearing, without objection, that he approached petitioner at the post office with Agent Graham, and that when Agent Graham asked if petitioner knew why the officers were there, petitioner stated, "[t]he envelopes have meth[amphetamine] in them."

Our consideration of the effect of the evidence garnered at the suppression hearing is guided by the proposition that, "[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. *In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference*." Syl. Pt. 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994)(emphasis supplied). This required deference leads to the firm conclusion that the Sturm affidavit established probable cause to support the search warrants that were issued. PNTF officers received credible information that petitioner would mail methamphetamine from that particular post office on an appointed date. Based on that information, they conducted surveillance and petitioner—as Virginia State Police said he would—arrived at the post office as scheduled. The circuit court credited testimony confirming the contents of the Sturm affidavit and, particularly, the testimony relating that petitioner acknowledged to officers that the packages he carried contained methamphetamine. We find no error.

We turn to petitioner's second assignment of error asserted by counsel, wherein he argues that West Virginia police officers acted outside of state jurisdiction when they detained petitioner at the post office, a federal property, and the circuit court therefore should have dismissed the indictment. As petitioner points out, West Virginia Code § 1-1-3 provides, in part:

> The consent of this state is hereby given to the acquisition by the United States, or under its authority, by purchase, lease, condemnation, or otherwise, of any land acquired, or to be acquired in this state by the United States, from any individual, body politic or corporate, for sites for . . . post offices . . . or for any other purpose for which the same may be needed or required by the government of the United States.

That statute goes on to cede to the United States "[c]oncurrent jurisdiction with this state in and over any land so acquired by the United States . . . for all purposes." Inasmuch as West Virginia explicitly retained concurrent jurisdiction over the postal property, we find no merit in this argument.

Next, we consider petitioner's third assignment of error asserted by counsel, wherein he argues that the State, though able to prove petitioner's possession of methamphetamine, was unable to prove that he had the intent to deliver it. Petitioner thus argues that the evidence was

4

insufficient to sustain his conviction on three counts of possession with intent to deliver, and we employ the following standard of review:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 663, 461 S.E.2d 163, 169 (1995). Petitioner was intercepted at a post office with two addressed packages containing methamphetamine. The implication is palpable, and we find no error in this regard.

Petitioner's next assignment of error asserted by counsel is that the circuit court erred in setting forth an unduly harsh sentence. We are loath to review such a sentence. "'Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 3, *State v. Georgius*, 225 W. Va. 716, 717, 696 S.E.2d 18, 19 (2010). However, petitioner asserts that his sentence was based on an impermissible factor; namely, he argues that the circuit court punished him for leaving his trial after jury voir dire and causing the court to issue a warrant for his arrest from the bench. Petitioner, first, has presented no evidence that his sentence was based to any degree on his having fled from trial and, second, has cited no authority to persuade us that this is an "impermissible factor" for sentencing purposes. We thus find no error.

Petitioner's fifth counsel-asserted assignment of error is that the State failed to disclose information about the Virginia State Police's confidential informant, and he characterizes this failure as a violation of the disclosure requirement of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[3] Before the Court would accept this characterization, however, we must find the following: "(1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial." Syl. Pt. 2, in part, *State v. Youngblood*, 221 W. Va. 20, 22, 650 S.E.2d 119, 121 (2007). We do not find that any of these components are present, because petitioner argues broadly that "the State did not provide enough evidence regarding the original controlled buys that were conducted in Virginia, [or evidence about police knowledge] that the defendant would be at the [p]ost [o]ffice." He does not specify particular evidence that was withheld by the prosecution. Thus, it is not clear that exculpatory or impeachment evidence exists, and there is no error.

---

[3] Petitioner asks that we find plain error in the asserted failure to disclose. (*See supra* n.1.) Having found no error, we need not further consider this matter.

5

Because petitioner's pro se supplemental brief also asserts a *Brady* violation, we momentarily diverge from our discussion of counsel-asserted errors to consider petitioner's third pro se assignment of error.[4] Petitioner argues that the State failed to produce a case from the United States District Court for the Northern District of West Virginia indicating that Cpl. Blevins, the West Virginia State Police officer and member of the PNTF who testified at the suppression hearing and later at trial, "filed a report with contradicted information contained in a search warrant application and containing false statements" in the course of a separate and unrelated criminal investigation. Petitioner did not provide a copy of or a citation to such a case. There is no evidence regarding the accusations against Cpl. Blevins in the appendix record before us, and we therefore are unable to proceed to even the first component of *Brady/Youngblood* to determine whether there existed exculpatory or impeachment evidence favorable to the defense. We find no error.

Having attended both *Brady* arguments, we return to the counsel-asserted assignments of error to address the sixth and final one, in which petitioner argues that "the State did not prove that [he] committed an act of possession with intent to deliver on January 2012."[5] The basis for petitioner's argument is that "[Cpl.] Blevins testified before the jury that [petitioner] committed these acts on December 13, 2012[, and another agent] testified that the events occurred on or about January 15, 2012," while the court instructed the jury that they occurred on some unspecified date in January of 2012.[6] Petitioner argues that the inconsistency of dates shows that the jury did not carefully consider the evidence. Our review of the appendix record on appeal confirms that the greater share of the evidence places the relevant dates in January of 2012, and that Cpl. Blevins appears to have misspoken once during his testimony in stating that the events occurred on December 12 and 13 of 2012. Again, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169. We find that the "rational trier of fact" could have found petitioner guilty in spite of this minor inconsistency in or misstatement about the dates of the crime, and we thus find no error.

---

[4] Petitioner asks that we find plain error in the asserted failure to disclose. (*See supra* n.1.) Having found no error, we need not further consider this matter.

[5] Inasmuch as petitioner asserts for the first time on appeal the existence of problematic, inconsistent evidence, he could prevail only under the plain error doctrine. (*See supra* n.1.) Having found no error, we need not further consider this matter.

[6] We note that the indictment charged that the events occurred "on or about the ＿＿ day of January, 2012[.]" Petitioner has not challenged the sufficiency of the indictment.

Petitioner's first assignment of error asserted pro se is that the circuit court "changed the trial dates without giving timely notice. . . ."[7] The crux of petitioner's complaint is that, at some point, the circuit court continued petitioner's trial date *by one day* from January 29, 2013, to January 30, 2013, and that this change "completely denied the petitioner any possibility in obtaining a fair trial," in part because *the State* was unable to secure the attendance of some of *the State's* witnesses that would have been available the previous day. We simply cannot credit sincerity to petitioner's puerile grumble. Petitioner has failed to show that he suffered prejudice as a result of the circuit court's short continuance, and we find no error.

Finally, we address the second assignment of error asserted by petitioner pro se. He argues that the Virginia police "circumvented 39 C.F.R. 233.2(c)(1) (U.S. Postal Mail Covers) and enlisted the help of a U.S. Postal Service employee to obtain information that does not appear anywhere on the outside of [any] letter or parcel of U.S. mail." We understand petitioner's objection to be that Virginia police could only have known which post office petitioner planned to use by asking a postal employee to check the postmark, but that only a postal inspector is permitted to do so, and only upon written request from a law enforcement agency. The Sturm affidavit reflects that petitioner had engaged in previous transactions with the Virginia confidential informant, and because of that history, Virginia State Police knew which post office petitioner would use. There is absolutely no evidence in the appendix record on appeal concerning the manner in which Virginia State Police officers reached that conclusion, much less is there any evidence that officers engaged in untoward tactics in doing so. Moreover, this is an issue raised for the first time on appeal. As such, we review this assignment of error for plain error, and we find petitioner's speculative assessment anything but plain. We therefore find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 17, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

[7] In the course of his argument on this matter, petitioner suggests that he was further harmed because the circuit court did not timely rule on his pretrial motion to dismiss the indictment on jurisdictional grounds. Because we have determined that there was no jurisdictional impediment to petitioner's prosecution, we find that the circuit court's delay—if indeed there was delay—was harmless.

7